IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ANTONIA D.,**[1]

    Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

Civ. No. 3:22-cv-00369-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Antonia D. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On January 31, 2020, Plaintiff filed an application for supplemental security income alleging disability beginning on January 1, 2012. Tr. 13. The applications were denied initially and upon reconsideration and, at Plaintiff's request, a telephonic hearing was held before an Administrative Law Judge ("ALJ") on April 22, 2021. *Id.* On September 27, 2021, the ALJ issued a decision finding Plaintiff

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

not disabled. Tr. 22. On January 11, 2022, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R.

§§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date, January 31, 2020.  Tr. 15.

At step two, the ALJ found that Plaintiff had the following severe impairments: history of rectal cancer with ostomy; hernia; cervical spine degenerative disc disease; and osteoarthritis of the fingers.  Tr. 15.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 16.

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: he can occasionally push/pull with the bilateral upper extremities; he can occasionally crawl and climb ladders, ropes, or scaffolds; he can frequently stoop and climb ramps and stairs; he can occasionally reach overhead; he can frequently handle and finger; he can tolerate occasional exposure to vibration; and he can tolerate no exposure to hazards such as unprotected heights and moving mechanical machinery.  Tr. 17-18.

At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a landscaper.  Tr. 20.  At step five that Plaintiff was capable of performing work that exists in significant numbers in the economy as a production assembler,

routing clerk, and marker. Tr. 21-22. As a result, the ALJ found that Plaintiff was not disabled. Tr. 22.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly discounting Plaintiff's subjective symptom testimony; (2) improperly discounting medical opinion evidence.

### I. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting his subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discounting the claimant's testimony regarding the severity of symptoms. *Id.*

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's testimony, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

In this case, Plaintiff has previously survived cancer and uses a colostomy bag. Tr. 225-26. Plaintiff testified that he suffers from a hernia which is "very painful." Tr. 211. Plaintiff testified that he had been to the hospital shortly before the hearing and had been given "a bunch of painkillers" and would be going to see a surgeon for a consultation. Tr. 211-12. Prior to this incident, Plaintiff had not received treatment for his hernia since 2018. Tr. 225. Plaintiff testified that he his hernia had been stable but that he carried a gallon of milk up a flight of stairs and that the activity aggravated the hernia. Tr. 222. Plaintiff has severe pain in his lower abdomen. *Id.* Plaintiff testified that his hernia is aggravated if he walks or rides his bike for long periods. Tr. 224. Plaintiff testified that he could walk for 30 to 45 minutes before he would need to sit down for three hours. Tr. 222. Plaintiff testified that he could ride his bike for between half a mile to a mile before his neuropathy would cause him to crash. Tr. 229. Plaintiff estimated that he can work for an hour before needing to rest for one to three days. Tr. 228. Plaintiff also suffers from back pain caused by a slipped disc. Tr. 232.

Plaintiff does not like to take powerful painkillers and so he deals with hernia pain by taking ibuprofen and Tylenol. 227-28. Plaintiff also treats his hernia with ice. Tr. 228. Plaintiff previously used methamphetamine in an effort to manage his pain but found that it was ineffective. Tr. 230.

Plaintiff testified that his memory was "really shot from childhood," and that he had "chemo brain" from his earlier cancer treatments. Tr. 213. Plaintiff testified that he was "[j]ust kind of scared of going" to the doctor because of his history of

health problems and because he's afraid of hearing bad news. Tr. 225-26. Plaintiff has been living on the streets and supports himself by collecting bottles and cans. Tr. 230-31.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 18.

First, the ALJ noted that Plaintiff's treatment history did not support his allegations concerning disabling symptoms. Tr. 18-19. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, a conflict between a claimant's testimony and the objective medical evidence is a proper basis for discounting subjective symptom testimony. *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999). Here, Plaintiff alleged that he was unable to work as a result of Stage 4 colon cancer, Stage 4 lung cancer, and hernia. Tr. 390. However, the medical evidence reflects that Plaintiff's cancer had been in remission for years. Tr. 638 (February 2018 treatment note documenting "a remote history of colon cancer, apparently in remission for 5-1/2 years after undergoing surgery, chemotherapy, and radiation."); 713 (May 2019 treatment note stating that Plaintiff's treatment was seven years previous and that "[i]f there is no evidence of metastatic disease, I think we could reasonably presume him to be

Page 7 – OPINION & ORDER

cured."). During Plaintiff's most recent examination in August 2020, Plaintiff did not list his hernia among his complaints. Tr. 760. On this record, the Court concludes that the ALJ reasonably considered Plaintiff's treatment history in assessing his testimony.

The ALJ also noted that, despite Plaintiff's testimony concerning severe pain, Plaintiff's pain management regime was conservative. Tr. 19. As noted, Plaintiff testified that he managed his pain with ibuprofen and Tylenol. Tr. 227-28, 230. Evidence of 'conservative' treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (internal quotation marks and citation omitted, alterations normalized); *see also Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (specifically finding the use of over-the-counter medication as an example of conservative treatment).

The ALJ notes, with respect to Plaintiff's hernia, that Plaintiff has no pain management regime and that, with respect to Plaintiff's back pain, that Plaintiff "has no chronic pain regime, including no over-the-counter analgesics regime." Tr. 19. There is evidence in the record that Plaintiff has been prescribed painkillers in the past. Tr. 510 (noting a prescription from 2015 for gabapentin); 558 (noting a 2013 prescription for gabapentin and oxycodone); 585 (a 2016 prescription for gabapentin); 622 (noting a 2015 prescription for gabapentin); 633 (noting a 2015 prescription for gabapentin); 641 (noting a 2015 prescription for gabapentin). As noted, however, Plaintiff testified that he takes ibuprofen and Tylenol to manage his hernia pain but testified that he does not "like anything too strong." Tr. 227-28. On this record, the

Court concludes that the ALJ reasonably concluded that Plaintiff's pain management regime was conservative.

Plaintiff also asserts that the ALJ erred by failing to consider Plaintiff's reasons for not pursuing treatment—namely his fear connected to medical treatment, his memory problems, and his homelessness. Here, however, the ALJ specifically considered Plaintiff's testimony concerning his reluctance to seek medical care. Tr. 18 ("He has not had medical care because he feels apprehensive and scared to go to a doctor, based on past experience.").

On this record, the Court concludes that the ALJ gave legally sufficient reasons for discounting Plaintiff's subjective symptom testimony and those reasons were supported by substantial evidence in the record.

## II. Medical Opinion Evidence

Plaintiff asserts that the ALJ erred in discounting the medical opinions of examining physician Raymond Nolan, M.D., Ph.D. The Ninth Circuit has clarified that under the new regulations, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship—no longer applies." *Woods v. Kijakazi*, 32 F.4th 785, 787. Now, an ALJ's "decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. "The most important factors that the agency considers when evaluating the persuasiveness of medical opinions are *supportability* and *consistency*." *Id*. at 791 (emphasis added, internal quotation marks and citations omitted). For supportability, the regulations provide that the "more relevant the objective medical

Page 9 – OPINION & ORDER

evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As for consistency: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Dr. Nolan examined Plaintiff in August 2020. Tr. 760. Dr. Nolan assessed Plaintiff as having chronic lower back pain, probable osteoarthritis of the fingers, chronic knee pain, chronic shoulder pain, and peripheral neuropathy. Tr. 761. In functional terms, Dr. Nolan restricted Plaintiff to occasional bending, twisting, and turning of the trunk; occasional pushing and pulling activity involving the upper extremities; use of the arms extended overhead would be limited to "the low-end of occasional"; occasional squatting and kneeling; and occasional repetitive hand activity. Tr. 762. He would be able to sit for six hours in an eight-hour day "but would need a liberal policy for position change as needed for comfort." *Id*. He would be able to stand for between two and four hours in an eight-hour day and could walk for two hours in an eight-hour day "with breaks as needed for comfort." *Id*. "Lifting and carrying should be limited to 10 pounds on a frequent basis and up to 20 pounds on occasion." Tr. 762.

The ALJ found Dr. Nolan's opinion "unpersuasive." Tr. 20. With respect to supportability, the ALJ accepted "[s]ome degree of fine manipulations limitations" but noted that Plaintiff "had only modest restriction of flexion capacity in his thumbs, he could manipulate things without difficulty, and he had normal grip strength." *Id.* In Dr. Nolan's examination, he found that Plaintiff was able to make a full fist and that his "[f]inger range of motion is within normal limits with the exception of the thumbs with a modest restriction of flexion capability." Tr. 760. "There is no synovial thickening or tenderness to joint palpitation except as related to the left thumb with tenderness involving the distal interphalangeal joint and MCP joint." *Id.* "Pinch tests first to second digits show 4/5 strength bilaterally." Tr. 760-61. Plaintiff was able to manipulate items without difficulty. Tr. 761. Plaintiff digital sensation was normal on the left and right. *Id.* Plaintiff's grip strength was normal on the left and right. *Id.* On this record, the Court concludes that the ALJ reasonably found that Dr. Nolan's conclusions regarding Plaintiff's limitations was not supported by his own examination notes.

With respect to consistency, the ALJ noted that Plaintiff's "lack of medical treatment suggests that his symptoms are not as severe as he alleged." Tr. 20. Plaintiff reported to Dr. Nolan that his chief complaints were back pain, neck pain, shoulder pain, and thumb pain. Tr. 760. However, as the ALJ observed, Plaintiff "has not had medical treatment or diagnostic testing for pain in the small joints of the hand." Tr. 19. With respect to neck pain, Plaintiff had not had treatment since

2018 when he had a scan of his cervical spine. Tr. 19; 719. On this record, the Court concludes that the ALJ appropriately assessed Dr. Nolan's opinion for consistency.

In sum, the Court concludes that the ALJ did not err by discounting the medical opinion of Dr. Nolan.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this ____23rd____ day of February 2024.

                                       /s/Ann Aiken  
                                       ANN AIKEN  
                                       United States District Judge